SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
ccardon@sheppardmullin.com
JAY T. RAMSEY, Cal Bar No. 273160
jramsey@sheppardmullin.com
ALYSSA SONES, Cal Bar No. 318359
asones@sheppardmullin.com
KEVIN MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700
Facsimile: (310) 228-3701

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANNE HEITING, individually and on behalf of all others similarly situated;

Plaintiff,

v.

WILLIAMS-SONOMA, INC., a California corporation; DOES 1 through 25, inclusive

Defendant.

Case No. 2:24-cv-08098-JFW-AS

*Hon. John F. Walter*

**DEFENDANT WILLIAMS-SONOMA, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[*Filed concurrently with Request for Judicial Notice and Proposed Order*]

Date: November 25, 2024
Time: 1:30 p.m.
Ct. Rm.: 7A

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 25, 2024, at 1:30 p.m., or as soon thereafter as the Motion may be heard in Courtroom 7A of the above entitled Court located at the United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, the Honorable John F. Walter presiding, Defendant Williams-Sonoma, Inc. will, and hereby does, move the Court for an order dismissing this action in its entirety with prejudice and without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 17, 2024.

Defendant moves to dismiss the Class Action Complaint filed by Plaintiff Anne Heiting under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). As to Federal Rule of Civil Procedure 12(b)(1), Plaintiff does not allege sufficient facts to establish that the Court has subject matter jurisdiction over her claim. Plaintiff never alleges that she visited Defendant's website. Consequently, she has failed to allege the requisite injury in fact necessary to establish Article III standing. As to Federal Rule of Civil Procedure 12(b)(6), Plaintiff fails to state a claim upon which relief can be granted. Specifically, the Court should dismiss the Class Action Complaint because it fails to state sufficient facts to constitute a cause of action against Defendant.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendant's Request for Judicial Notice filed concurrently herewith and the exhibits attached thereto, and all pleadings and papers in the Court's file, the record and files herein, and upon such oral argument as may be made at the hearing on the Motion and such other evidence as may be admitted at the time of the hearing on the Motion.

Dated: October 25, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s\/ Jay T. Ramsey*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ALLEGATIONS IN THE CLASS ACTION COMPLAINT ..... 2

III. THE COURT SHOULD DISMISS THE CLASS ACTION COMPLAINT ..... 3

A. Plaintiff Lacks Article III Standing ..... 3

1. Legal Standard ..... 3

2. Plaintiff has not alleged an injury in fact ..... 4

B. Plaintiff Has Failed To State A Claim Under California Penal Code Section 638.51 ..... 4

1. Legal Standard ..... 4

2. Section 638.51 applies only to telephone communications, not website technologies ..... 5

a. Statutory text and structure ..... 5

b. Legislative history ..... 7

(1) Assembly Bill 929 ..... 8

(2) Assembly Bill 1924 ..... 9

c. California Consumer Privacy Act ..... 10

d. Public policy ..... 12

e. The statute must be construed in Defendant's favor ..... 13

3. Even if website technologies can be trap and trace devices, the TikTok Software is not a trap and trace device ..... 14

4. Defendant is exempted from liability as a provider of an electronic communication service ..... 16

5. Plaintiff fails to plead that Defendant's use does not fall within other permissible uses under section 638.51(b) ..... 19

6. The Court should not follow Moody v. C2 Educational Systems Inc., Greenley v. Kochava, Inc., and Shah v. Fandom, Inc. ..... 20

IV. CONCLUSION ..... 22

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 4

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) ........ 4

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ........ 4

*Brown v. Google LLC*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 15, 16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*
65 F. Supp. 3d 840 (N.D. Cal. 2014) ........ 5

*Cody v. E. Gluck Corp.*
No. 23-cv-02286, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2023) ........ 4

*CopyTele, Inc. v. E Ink Holdings, Inc.*
962 F. Supp. 2d 1130 (N.D. Cal. 2013) ........ 3

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 14

*Greenley v. Kochava, Inc.*
No. 22-cv-01327, 2023 WL 4833466 (S.D. Cal. July 7, 2023) ........ 20, 21

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) ........ 18

*Leocal v. Ashcroft*
543 U.S. 1 (2004) ........ 14

*LVRC Holdings LLC v. Brekka*
581 F.3d 1127 (9th Cir. 2009) ........ 13

*In re Meta Pixel Healthcare Litig.*
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 15

*Moody v. C2 Educational Systems Inc.*
No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024)................20, 21

*Price v. Carnival Corp.*
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ............................................................15

*In re Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*
9 F.C.C. Rcd. 1764 (1994) ..................................................................16, 17

*Shah v. Fandom, Inc.*
No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ................20, 21

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .....................................................................................3, 4

*St. Aubin v. Carbon Health Techs., Inc.*
No. 24-CV-00667, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).......................15

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) ..........................................................................................4

*In re Zynga Priv. Litig.*
750 F.3d 1098 (9th Cir. 2014)..........................................................................15

**<u>State Cases</u>**

*Copley Press, Inc. v. Superior Court*
39 Cal.4th 1272 (2006).................................................................................12, 22

*Hale v. Morgan*
22 Cal. 3d 388 (1978)......................................................................................13

*Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.*
29 Cal. 4th 911 (2003).......................................................................................7

*Kearney v. Salomon Smith Barney, Inc.*
39 Cal. 4th 95 (2006)........................................................................................14

*Larkin v. Workers' Comp. Appeals Bd.*
62 Cal. 4th 152 (2015).......................................................................................5

*Lexin v. Superior Court*
47 Cal.4th 1050 (2010)......................................................................................10

*Nat'l Indem. Co. v. Garamendi*
233 Cal.App.3d 392 (1991) ........ 11

*Ohio Domestic Violence Network v. PUC of Ohio*
638 N.E.2d 1012 (Ohio 1994) ........ 16, 17

*People v. Mobile Oil Corp.*
143 Cal. App. 3d 261 (1983) ........ 14

*People v. Moon*
193 Cal. App. 4th 1246 (2011) ........ 14

*People v. Mutter* (2016)
1 Cal.App.5th 429 ........ 14

*S. Bell Tel. & Tel. Co. v. Hamm*
409 S.E.2d 775 (S.C. 1991) ........ 16, 17

*Saracco Tank and Welding Co. v. Platz*
65 Cal. App. 2d 306 (1944) ........ 13

*Tos v. Mayfair Packaging Co.*
160 Cal. App. 3d 67 (1984) ........ 13

*Weber v. Pinyan*
9 Cal. 2d 226 (1937) ........ 13

*Wis. Pro. Police Ass'n v. PSC*
555 N.W.2d 179 (Wis. Ct. App. 1996) ........ 16, 17

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

18 U.S.C. § 3121(b) ........ 17, 18

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Civ. Code § 1798.100(c) ........ 11

Cal. Civ. Code § 1798.100 ........ 11

Cal. Civ. Code § 1798.105 ........ 11

Cal. Civ. Code § 1798.140(v)(1) ........ 11

Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G) ........ 11

Cal. Penal. Code § 632.01(a)(1) .......... 7
Cal. Penal Code §§ 637.2(a), (c) .......... 13
Cal. Penal Code § 638.50 .......... passim
Cal. Penal Code § 638.51 .......... passim
Cal. Penal Code § 638.52 .......... passim
California Penal Code § 638.53 .......... passim
Cal. Penal Code § 1546 et seq. .......... 9

**Other Authorities**

Assembly Bill 929 .......... 8, 9
Assembly Bill 1924 .......... 9, 10, 21

# I. INTRODUCTION

Plaintiff alleges a violation of California Penal Code section 638.51 ("section 638.51"), which prohibits the use of a "trap and trace device" without a court order. A "trap and trace device" is a "device or process" installed on a person's phone "that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50. In simple terms, a "trap and trace device" is a device that a third party installs on a person's telephone that tells that third party who called that person's phone. Trap and trace devices are used by law enforcement to determine if a suspect is engaging in criminal activity. For example, if law enforcement installed a trap and trace device on Person A's phone, the trap and trace device would tell law enforcement that Person A received a phone call from Person B's phone number.

This case, however, is not about phones, phone calls, a criminal investigation, or a third-party installing any type of device on Plaintiff's phone. Rather, this case is brought against Defendant Williams-Sonoma, Inc. ("WSI" or "Defendant"), which operates a website, www.pbteen.com, where it sells teen bedding, furniture and decor. Plaintiff alleges that WSI installed software created by TikTok on its website and uses the software to capture record information about the devices that website visitors use to visit the website. The software then shares the information with TikTok to learn the identity of website visitors. Plaintiff alleges that the software is a trap and trace device, and that WSI has violated section 638.51 by installing and using the device without a court order. ***Critically, however, Plaintiff never alleges that she visited the website***. By never visiting the website, Plaintiff has failed to allege that the TikTok Software captured *her* information. As a result, she does not have standing to assert a violation of section 638.51.

But even if Plaintiff had visited the website, the TikTok Software is not a trap and trace device. A trap and trace device is installed by one person on another person's device without their consent. Plaintiff alleges that WSI installed the software on *its own website, not her device*. This is akin to Person A using Caller ID on his own phone to learn that Person B is calling him, which is obviously not illegal.

Considering the complete mismatch between Plaintiff's theory and the statute at issue, it is no surprise that this case should be dismissed. ***First***, section 638.51 applies only to telephones, not to a website that captures information sent to it from a visitor's device. This is confirmed by the text, structure, and legislative history of section 638.51. Moreover, applying section 638.51 to a website cannot be squared with the California Consumer Privacy Act ("CCPA"). The CCPA was enacted *after* section 638.51 and regulates the exact conduct that is the subject of Plaintiff's Complaint. Thus, Plaintiff's interpretation of section 638.51 undermines the CCPA. ***Second***, even if the Court finds that section 638.51 applies to website software, the software that WSI allegedly installed on its website is not a trap and trace device because it purportedly collects the "contents" of a communication. By definition, software that collects the "contents" of a communication is not a trap and trace device. ***Third***, even if the software is a trap and trace device, WSI is exempted from liability because it is a provider of an electronic communication service. ***Fourth***, WSI acknowledges that some courts have denied a defendant's motion to dismiss a plaintiff's section 638.51 claim. But for the reasons explained in Section III.B.6, those cases were wrongly decided and are distinguishable. The Motion to Dismiss should be granted.

## II. ALLEGATIONS IN THE CLASS ACTION COMPLAINT

WSI is a retailer that operates a website, www.pbteen.com (the "Website"). (*Id.*) Plaintiff alleges that WSI "has installed on its Website software created by TikTok [("TikTok Software" or "Software")] in order to identify website visitors."

(*Id.*) According to Plaintiff, when a user visits a website, the user's device generates "electronic impulses" that are sent to the website. (*Id.* ¶¶ 15-16.) On WSI's website, the TikTok Software allegedly captures the "incoming electronic impulses," which constitute "device and browser information, geographic information, referral tracking, and URL tracking" along with "phone number, email, routing, addressing, and other signaling information." (*Id.* ¶¶ 10, 15, 29.) Information inputted into the Website, "such as name, date of birth, and address" information, is also "simultaneously sent to TikTok," so that TikTok can identify the website visitor. (*Id.* ¶ 11.)

Plaintiff does not allege that she visited the Website or that the TikTok Software captured *her* information. Nonetheless, Plaintiff alleges that the TikTok Software is a trap and trace device and that WSI gathered the information generated from website visitors' devices without their knowledge, consent, or a court order in violation of section 638.51. (Compl. ¶¶ 29-30.)

## III. THE COURT SHOULD DISMISS THE CLASS ACTION COMPLAINT

### A. Plaintiff Lacks Article III Standing

#### 1. *Legal Standard*

Standing is "a matter of subject matter jurisdiction" and may be challenged under Rule 12(b)(1). *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F. Supp. 2d 1130, 1135 (N.D. Cal. 2013) (citing *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) (stating that Article III "[s]tanding is a threshold matter central to our subject matter jurisdiction")). As a threshold matter, a Plaintiff bears the burden of demonstrating they have Article III standing, requiring that a Plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

### 2. *Plaintiff has not alleged an injury in fact*

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339. A plaintiff does not satisfy the injury in fact requirement just because "a statute grants a person a statutory right and purports to authorize that person to sue to indicate that right." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).

Here, Plaintiff has failed to allege an injury in fact because she never alleges that she visited the Website. By not alleging that she visited the Website, Plaintiff cannot establish that the TikTok Software captured her information. Consequently, she cannot demonstrate that WSI's alleged use of the TikTok Software injured her. *See Cody v. E. Gluck Corp.*, No. 23-cv-02286, 2024 WL 4314187 (N.D. Cal. Sept. 26, 2023) (dismissing complaint where plaintiff alleged the chat feature on the defendant's website violated the California Invasion of Privacy Act but failed to "allege that she actually used the chat feature on Defendant's website"). The Court should therefore dismiss Plaintiff's Complaint for lack of standing.

## B. <u>Plaintiff Has Failed To State A Claim Under California Penal Code Section 638.51</u>

### 1. *Legal Standard*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims asserted in a complaint. A claim should be dismissed where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff must do more than allege "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must at least allege sufficient facts "to raise a right to relief above a speculative level." *Id. See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 849 (N.D. Cal. 2014) (cleaned up).

**2. *Section 638.51 applies only to telephone communications, not website technologies***

Trap and trace devices are devices used by law enforcement to track who is calling whom ***by telephone***. They are not devices that relate in any way to tracking on the internet. This is confirmed by the statutory text and structure, the legislative history, the context of California's overall regulatory scheme, and public policy. As a result, section 638.51 does not apply to WSI's alleged use of the TikTok Software.

**a. Statutory text and structure**

When interpreting a statute, the California Supreme Court has instructed courts to "begin with its text" because "statutory language typically is the best and most reliable indicator of the Legislature's intended purpose." *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 157 (2015). If the statute's text "depends on cross-referenced provisions," those provisions are equally indicative of the Legislature's intent. *Id.* at 160. The "text alone," however, "is not dispositive." *Id.* "[T]exual arguments are further bolstered by structural ones—[the statute's] place in the broader structure of the statutory scheme." *Id.*

Starting with the text, section 638.51 states that "a person may not install or use a . . . trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A "trap and trace device" is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50. While the definition of

"trap and trace device" does not expressly state whether it includes general website technologies that capture incoming information from a website visitor's device, the cross-referenced provisions in the statute, sections 638.52 and 638.53, confirm that it does not.

Sections 638.52 and 638.53 permit law enforcement to use a trap and trace device if certain conditions are met. Subsection (d) of section 638.52 details specific information that must be included in a court order authorizing the use of a trap and trace device. Critically, such information includes the ***telephone line*** and ***telephone number*** of the individual that law enforcement is investigating. Indeed, the subsection states that a court order permitting law enforcement to use a trap and trace device must include "[t]he identity, if known, of the person to whom is leased or in whose name is listed ***the telephone line*** to which the . . . trap and trace device is to be attached." Cal. Penal Code § 638.52(d)(1) (emphasis added). The order must also include "[t]he ***number*** and, if known, physical location of the ***telephone line*** to which the . . . trap and trace device is to be attached." *Id.* § 638.52(d)(3) (emphasis added). Furthermore, subsection (c) again references telephones, stating that information acquired via a trap and trace device shall not include the physical location of the targeted individual "except to the extent that the location may be determined from the ***telephone number***." *Id.* § 638.52(c) (emphasis added).

The multiple references to telephones in sections 638.52 and 638.53 demonstrate that a "trap and trace device" applies only to telephonic communications. If the Legislature had intended, in 2015, for a trap and trace device to encompass communications beyond telephonic communications, it would not have required a court order authorizing the use of a trap and trace device to detail the "number" and "physical location" of a "telephone line." Indeed, the decision to limit sections 638.50-638.53 to telephonic communications was a deliberate choice by the Legislature. For example, in 2016, the Legislature enacted a new provision of CIPA, section 632.01, which prohibits the disclosure of certain

confidential communications "in any forum, including . . . *Internet Web sites*." Cal. Penal. Code § 632.01(a)(1) (emphasis added). The Legislature's choice to apply section 632.01 to the internet, but omit similar language from sections 638.50-638.53, demonstrates that the Legislature intended section 638.51 to apply only to telephones. Furthermore, in 2016, one year after enacting sections 638.50-638.53, the Legislature amended section 638.52 to compensate telecommunications providers for assisting law enforcement in installing a pen register or trap and trace device. Cal. Penal Code § 638.52(j). Yet, the Legislature chose not to amend section 638.52 to remove the language referencing telephones. What's more, in 2022, the Legislature again amended section 638.52. This time to prohibit a magistrate judge from authorizing the use of a pen register or trap and trace device in certain situations. Cal. Penal. Code § 638.52(m). Again, the Legislature did not remove the language referencing telephones. Nor did the Legislature amend sections 638.50-638.53 to explicitly state that trap and trace devices applied to internet communications. *See In re The Application of the United States of America for an Order Authorizing the use of a Cellular Telephone Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (explaining that Congress's decision to limit the Federal Wiretap Act's trap and trace provision to telephone lines could "not be assumed to be inadvertent").

In short, there is nothing in the statutory text that suggests that the Legislature intended section 638.51 to apply to a website operator that uses common website technologies to capture incoming information from a website visitor's device.

**b. Legislative history**

In addition to the statutory text, a court may consider the statute's legislative history to determine the Legislature's intent. *Kavanaugh v. W. Sonoma Cty. Union High Sch. Dist.* 29 Cal. 4th 911, 920 (2003) ("In order to ascertain a statute's most reasonable meaning, we often examine its legislative history."). The legislative history of sections 638.50-638.53 further support the conclusion that the Legislature

never intended for section 638.51 to apply to commercial websites that capture incoming information from a website visitor's device.

(1) Assembly Bill 929

California Penal Code sections 638.50-638.53 were enacted in 2015 as part of a statutory scheme that authorized state and local law enforcement to use trap and trace devices so long as certain conditions were met. (Request for Judicial Notice ["RJN"] Ex. A, p. 1].) According to the legislative history, the purpose of Assembly Bill 929 (now Penal Code sections 638.50-638.53) was "to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law." (RJN Ex. B, p. 4].) The need for the bill arose due to a conflict between federal and state law. Federal law authorized "states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." (RJN Ex. A, p. 10].) At the time, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." (*Id.*) Thus, local and state law enforcement agencies that utilized trap and trace devices on an emergency basis were technically in violation of federal law. (RJN Ex. B, pp. 5-6].) Assembly Bill 929 sought to remedy that problem by creating a comprehensive statutory scheme that "explicitly authorize[d] state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations." (*Id.*, p. 6.)

As can be seen from the above, nothing in the legislative history indicates that the Legislature intended section 638.51 to apply to common website technologies that capture incoming information from a website visitor's device. This is further confirmed by the Assembly and Senate bill analyses, which describe the statute as one that applies to "telephone surveillance." Indeed, the legislative history

repeatedly refers to pen registers and trap and trace devices as tools that law enforcement uses to collect telephone numbers. (*See* RJN Ex. A, p. 10 ["[A]nother tool law enforcement uses is called a ***'trap and trace device' which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers***." (emphasis added)]; *id.*, p. 10 ["Pen registers and track *[sic]* and trace devices track ***incoming and outgoing telephone calls***." (emphasis added)]; *id.*, p. 11 ["any location information obtained by a pen register or a track *[sic]* and trace device is limited to the information that is contained in the ***telephone number***" (emphasis added)]; Ex. B, p. 1 [stating that AB 929 "[a]uthorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in ***telephone surveillance***" (emphasis added)]; *id.*, p. 5 ["As noted above, pen registers/trap and trace devices are used by law enforcement for ***telephone surveillance*** to record incoming and outgoing ***phone numbers from a tapped line***." (emphasis added)]; Ex. C, p. 1 ["This bill authorizes state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in ***telephone surveillance*** . . . ." (emphasis added)].) In contrast, the legislative history does not mention websites, IP addresses, website technologies, or an any intent by the Legislature for website visitors like Plaintiff to use the statute as a vehicle to enforce their privacy rights through civil litigation. If section 638.51 was meant to apply to commercial websites that capture incoming information from a website visitor's device – and therefore to consumers that visit such websites – the legislative history would have at least acknowledged that, particularly given the internet's widespread use by 2015. But it does not.

(2) Assembly Bill 1924

If Assembly Bill 929 wasn't enough, the Legislature reaffirmed in Assembly Bill 1924 that section 638.51 was meant to apply only to telephones. Assembly Bill 1924 was enacted into law one year after Assembly Bill 929. Assembly Bill 1924 primarily amended California's Electronic Communication Privacy Act ("ECPA")

(Cal. Penal Code §§ 1546 et seq.), which allowed the government to compel the production of electronic communications if the government obtained a search warrant or a wiretap order. (RJN Ex. F, pp. 6-9.) The ECPA did not, however, state whether the government could compel the production of electronic communication information pursuant to a pen register or trap and trace device. (*Id.*) Assembly Bill 1924 amended the ECPA to ensure the government could compel the production of electronic communication information pursuant to a pen register and trap and trace device. (*Id.*)

Critically, the bill analyses of Assembly Bill 1924 explain that the "electronic information" that pen registers and trap and trace devices obtain are "***call detail records***." (RJN Ex. F, p. 7 [emphasis added].) In other words, the bill analyses confirm that the electronic communication information that is captured by a trap and trace device is phone numbers, not information derived from the internet, like browser information or IP addresses. Importantly, both the ECPA and section 638.50 (which defines pen registers and trap and trace devices) use the term "electronic communication," suggesting that when the Legislature defined a trap and trace device as a device that "identif[ies] the source of a . . . electronic communication" it meant communications via telephone, not the internet. This is further confirmed by the bill analyses of Assembly Bill 1924, which state that trap and trace devices collect telephone numbers. (*See* RJN Ex. D, p. 7 ["A 'trap and trace device' records what ***numbers had called a specific telephone***, i.e., all ***incoming phone numbers***." (emphasis added)]; Ex. E, p. 1 ["pen register/trap and trace-device[s] . . . are ***telephone surveillance devices used to record incoming and outgoing phone numbers***" (emphasis added)].)

**c. California Consumer Privacy Act**

When interpreting a statute, courts "endeavor to harmonize it with other enactments to the extent possible." *Lexin v. Superior Court*, 47 Cal.4th 1050, 1095 (2010). Indeed, when possible, "courts must construe a statute so as not to conflict

with the other legislative enactments." *Nat'l Indem. Co. v. Garamendi*, 233 Cal.App.3d 392, 405 (1991). Here, Plaintiff's interpretation of section 638.51 cannot be reconciled with the California Consumer Privacy Act ("CCPA").

Enacted in 2018, three years after section 638.51, the CCPA regulates the collection of "personal information" by businesses. Cal. Civ. Code § 1798.100 et seq. The definition of "personal information" is broad: "'Personal Information' means information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer." Cal. Civ. Code § 1798.140(v)(1). In addition, personal information specifically includes: (1) "Identifiers such as . . . email address"; (2) "Internet or other electronic network activity information, including . . . a consumer's interaction with an internet website application"; and (3) "Geolocation data." Cal. Civ. Code § 1798.140(v)(1)(A), (F), (G). Importantly, the CCPA permits businesses to collect personal information (and therefore all the information identified above) as long as the business complies with the CCPA. *See* Cal. Civ. Code § 1798.100(c). And the CCPA grants consumers the "right to request that a business delete any personal information about the consumer that the business has collected from the consumer." Cal. Civ. Code § 1798.105.

In light of the CCPA, Plaintiff's interpretation of section 638.51 is illogical. If, according to Plaintiff, section 638.51 prohibits businesses from collecting any information generated from a website visitor's device that identifies the website visitor, including email addresses, geolocation data, and a visitor's interaction with the website (i.e., the exact information that Plaintiff alleges the TikTok Software collects (Compl. ¶¶ 10-11, 15, 29)), why did the Legislature permit businesses to collect such information and afford consumers the right to request that businesses delete such information? The only logical interpretation is that section 638.51 does not apply to website technologies that capture incoming information sent from a

website visitor's device. For this additional reason, Plaintiff's proffered interpretation of section 638.51 is incorrect.[1]

**d. Public policy**

After examining the statutory text, structure, and legislative history, if the statute's meaning is still uncertain, "it is appropriate [for a court] to consider the consequences that will flow from a particular interpretation." *Copley Press, Inc. v. Superior Court*, 39 Cal.4th 1272, 1291 (2006) (quotations omitted). The California Supreme Court has instructed that "where more than one statutory construction is arguably possible," the Court's "policy has long been to favor the construction that leads to the more reasonable result." *Id.* "This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose." *Id.* Thus, a court should "select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." *Id.*

Interpreting the statute as Plaintiff proposes would lead to unreasonable results that the Legislature never contemplated. If, as Plaintiff alleges, a website that uses a website technology to capture incoming information from a website visitor's device is using a trap and trace device, then every website that obtains such information would be subject to criminal liability. A website operator cannot obtain a court order permitting it to use such technology because it is not a peace officer. *See* Cal. Penal Code §§ 638.52, 638.53. And a website operator cannot obtain a website visitor's consent to use the technology because, under section 638.51, consent is a defense only for the provider of an electronic communication service. Cal. Penal Code § 638.51. Although WSI argues that it is a provider of an

[1] The CCPA also does not mention pen registers, trap and trace devices, or section 638.51. If, as Plaintiff alleges, section 638.51 regulates the collection of the same information as the CCPA, one would think that the CCPA would acknowledge that.

electronic communication service (*see infra* Section III.B.4), if the Court disagrees, Plaintiff's consent would not shield WSI from liability. Accordingly, under Plaintiff's interpretation (and assuming that WSI is not an electronic service provider), every website operator that uses common website technologies would be liable. That cannot be what the Legislature intended when it enacted section 638.51, especially because neither the statute itself nor the legislative history ever mentions the internet, websites, or website technologies. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) ("The Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants.").

**e. The statute must be construed in Defendant's favor**

To the extent there is any doubt about the proper interpretation of section 638.51, the Court must construe the statute in WSI's favor because (1) the statute is penal in nature and created new liability; and (2) the rule of lenity requires criminal statutes, even when used as the basis for a civil claim, to be construed in the defendant's favor.

First, statutes that carry statutory penalties that are penal in nature "should receive a strict construction" in favor of defendants. *Saracco Tank and Welding Co. v. Platz*, 65 Cal. App. 2d 306, 315 (1944). This is especially true where a statute creates a new statutory liability, as opposed to amending an old statute or codifying a common law offense. *Tos v. Mayfair Packaging Co.*, 160 Cal. App. 3d 67 (1984); *Weber v. Pinyan*, 9 Cal. 2d 226 (1937). Here, section 638.51 is penal because the provision that imposes a penalty for a violation of section 638.51, section 637.2, does so without regard to compensation for any actual loss suffered. Cal. Penal Code §§ 637.2(a), (c) (a successful civil claimant is entitled to "[f]ive thousand dollars ($5,000)" without any proof of actual damages); *Hale v. Morgan*, 22 Cal. 3d 388, 397-99 (1978) (Civil Code § 789.3, which imposes a mandatory penalty of $100 per day and does not permit the trier of fact discretion in fixing the penalty, is

penal in nature). Further, the California Supreme Court recognized that section 637.2 "explicitly created a new, statutory private right of action, authorizing any person who has been injured by any violation of the invasions-of-privacy legislation to bring a civil action. . . ." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 115-16 (2006). Indeed, the statute's location in the Penal Code itself is sufficient to suggest that it is penal in nature. *See People v. Moon*, 193 Cal. App. 4th 1246 (2011) (giving "considerable weight" to fact that statute falls within a title of the Penal Code when construing statute).

Second, section 638.51 must be construed in WSI's favor because the rule of lenity requires courts to "interpret an ambiguous criminal statute in the defendant's favor." *See People v. Mutter* (2016) 1 Cal.App.5th 429, 436. The rule of lenity applies even where, as here, a criminal statute is used as the basis for a civil claim. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the [criminal] statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *People v. Mobile Oil Corp.*, 143 Cal. App. 3d 261 (1983) (explaining that the rule of lenity applies "even when the underlying action is civil in nature").

As a result, to the extent there is any doubt about the proper interpretation of section 638.51, the above doctrines compel the Court to find in favor of WSI.

**3. *Even if website technologies can be trap and trace devices, the TikTok Software is not a trap and trace device***

Under section 638.50, a trap and trace device "captures the incoming electronic or other impulses . . . or other dialing, routing, addressing, or signaling information . . . *but not the contents of a communication*." Cal. Penal. Code § 638.50 (emphasis added). Thus, if the device collects the "contents of a communication," it is not a trap and trace device.

Courts analyzing CIPA claims use the Federal Wiretap Act's definition of "contents." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021).

Under the Federal Wiretap Act and CIPA, the "contents" of a communication "refer[] to the intended message conveyed by the communication, and do[] not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts hold that when website software like the TikTok Software collects URLs, the software is collecting the contents of a communication. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) (holding that descriptive URLs collected by the Meta Pixel were "contents"). Courts hold that URLs are "contents" because they reveal the pages that a user has visited on a particular website or search terms that a user has entered. *Id.*; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 935 (N.D. Cal. 2023) (holding that "full-string detailed URLs" sent to Google constituted the contents of a communication"); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (collecting cases and holding that Facebook Pixel and Google Pixel collected the contents of a communication because "the URLs transmitted to Facebook and Google include a patient's symptoms or the reason for her medical appointment").

Additionally, courts have held that information submitted "into a form" provided by a website constitutes the "contents" of a communication. *See In re Zynga Priv. Litig.*, 750 F.3d at 1107 (citing *In re Pharmatrak*, 329 F.3d 9, 15, 18-19 (1st Cir. 2003)) ("Because the users had communicated with the website by entering their personal medical information into a form provided by a website, the First Circuit correctly concluded that the defendant was disclosing the contents of a communication."); *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1360 (S.D. Cal. 2024) (holding that the plaintiffs' "date of birth, home address, phone number, [and] email address" were "contents" because the information "was entered into an information field or text box" on the defendant's website).

Here, Plaintiff alleges the TikTok Software collects the contents of a communication in two ways. First, Plaintiff alleges that the TikTok Software collects URLs "every time a user clicks on a page." (Compl. ¶¶ 10, 13.) By collecting the URL of each page a user visits, TikTok learns what pages a particular user has visited. Such information constitutes the "contents" of a communication. *See Brown*, 685 F. Supp. 3d at 935. Second, Plaintiff alleges that "when the website asks for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok." (Compl. ¶ 11.) To the extent Plaintiff is alleging that website visitors input this information into the Website, and the TikTok Software sends this information to TikTok, the inputted information is the contents of a communication. Because Plaintiff has alleged the TikTok Software collects the contents of a communication, the Software is not a trap and trace device.

**4. *Defendant is exempted from liability as a provider of an electronic communication service***

Even if the TikTok Software is a trap and trace device, WSI is not liable because section 638.51(b) permits it to use a trap and trace device on its own website. Caselaw analyzing whether Caller ID is a trap and trace device provides a useful analogy. Caller ID identifies incoming telephone numbers, just as the TikTok Software allegedly identifies incoming information about a visitor's device. In the 1990s, courts and regulatory agencies applying laws identical to California's section 638.51 had to grapple with whether Caller ID – a new technology at the time – was a trap and trace device, and thus illegal. While courts and regulatory agencies held that Caller ID was a trap and trace device, they, nonetheless, concluded that the use of Caller ID was legal. *See Ohio Domestic Violence Network v. PUC of Ohio*, 638 N.E.2d 1012, 1020 (Ohio 1994) (hereinafter "*Ohio Domestic*"); *S. Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775 (S.C. 1991); *Wis. Pro. Police Ass'n v. PSC*, 555 N.W.2d 179 (Wis. Ct. App. 1996) (hereinafter "*Wisconsin Professional*"); *In re*

*Rules and Policies Regarding Calling No. Identification Serv.—Caller ID*, 9 F.C.C. Rcd. 1764 (1994) (hereinafter "*FCC Decision*").

For example, in the *FCC Decision*, the Federal Communication Commission ("FCC") considered whether Caller ID violated the trap and trace provision of the Federal Wiretap Act. 9 F.C.C. at 1774. The Federal Wiretap Act prohibits the installation and use of a trap and trace device without a court order. But the Federal Wiretap Act provides an exception: it permits (1) the "provider of electronic or wire communication service" (2) to use or install a trap and trace device (3) where "the user of that service" (4) consents. *Id.* at 1780; *see also* 18 U.S.C. § 3121(b). While the FCC concluded that Caller ID was a trap and trace device, it held that a telephone company that provided Caller ID to a telephone subscriber fell within the Act's exception. *Id.* at 1775, 1780. The FCC first held that a telephone company was a "provider of electronic or wire communication service." *Id.* Second, the FCC reasoned that the telephone company used or installed the trap and trace device on a subscriber's telephone. *Id.* Third, the FCC reasoned that the telephone company had to obtain consent only from the "relevant user" of its services to use the trap and trace device. *Id.* The "relevant user" was the telephone subscriber "whose incoming calls are being trapped and traced, *not* those subscribers whose outgoing calls happen to be identified by such device." *Id.* (emphasis added). Fourth, the FCC held that the telephone subscriber, i.e., the "relevant user," consented to the trap and trace device by paying for the Caller ID service. *Id.* Accordingly, the telephone company had not violated the Federal Wiretap Act. *Id.*; *see also Ohio Domestic*, 638 N.E.2d at 322 (holding the same); *Wisconsin Professional*, 555 N.W.2d at 80 ("It is consistent with the [Federal Wiretap Act's] purpose to require only that the Caller ID subscriber consent to the trap and trace device"); *Hamm*, 409 S.E.2d at 73-74 (holding the same as to South Carolina's similar trap and trace law and explaining that the telephone company need only obtain the consent of the person being called).

Importantly, California's section 638.51(b) contains the same exact exception as the Federal Wiretap Act. *Compare* 18 U.S.C. § 3121(b) (stating that an electronic service provider may use a trap and trace device where the consent of the user is obtained) *with* Cal. Penal Code § 638.51(b) (same). Thus, for the same reasons that the FCC and other courts held that a telephone company is not liable for using a trap and trace device when it provides Caller ID to its subscribers, WSI is not liable for installing and using the TikTok Software on its website. First, like a telephone company, WSI is the provider of an "electronic communication service" – here, its website. (Compl. ¶ 8.) Like a telephone company that provides the telephonic means for two individuals to converse, WSI owns and operates its website, which provides the means for its customers to communicate with it. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (holding that under the Federal Wiretap Act a "website fits the definition of 'electronic communication'"). Second, WSI installed and used the trap and trace device on its website. (Compl. ¶ 8.) Third, WSI is a user of its website. It uses the Website to sell products and communicate with its customers. And it is WSI, not Plaintiff, that is the "the relevant 'user'" of the Website because the TikTok Software is installed and used on its website, not Plaintiff's device. *FCC Decision*, 9 F.C.C. at 1774. Fourth, as the relevant user of its website, WSI consented to the installation and use of the TikTok Software when it chose to install the Software on its website. (Compl. ¶ 8.) Accordingly, WSI falls within section 638.51(b)'s statutory exception. As such, it was permitted to install and use the TikTok Software on its website and is therefore not liable.[2]

---

[2] This analysis would of course change if Plaintiff alleged that WSI installed the TikTok Software on *her device*. In that case, WSI would no longer be the "relevant user," and WSI would have to obtain Plaintiff's consent before installing and using the trap and trace device. But Plaintiff does not allege this. As the operator and user of its website, WSI has the right to install the TikTok Software on its site.

### 5. *Plaintiff fails to plead that Defendant's use does not fall within other permissible uses under section 638.51(b)*

Plaintiff has also failed to plead that any of the other express statutorily permissible purposes for utilizing a trap and trace do not apply. Rather, she pleads facts that essentially establish that the collection of the information in question is subject to those permissible purposes.

Section 638.51(b) contains a list of permissible uses of a trap and trace device. These are not affirmative defenses but are a part of the statute identifying permissible uses of anything that would otherwise qualify as trap and trace device. In other words, the statutory restrictions on use of a trap and trace have parameters (found in the statute itself). By simply claiming that the challenged technology is a trap and trace device, it does not follow that a violation of section 638.51 has occurred. Plaintiff must plead, with facts not conclusions, that the alleged conduct is not just a trap and trace, but that it also falls outside the permissible uses within the statute. Plaintiff has not even attempted to do this.

Here, the allegations in the Complaint, indicate that the challenged technology, basically a cookie, falls within the permissible uses of a trap and trace device. A user comes to a website with essentially one piece of information, an IP address. All of the items Plaintiff claims are sent to TikTok are pieces of information that are derived from cross referencing the IP address with other information. Though the Complaint is vague (a problem in and of itself), it is basically challenging the collection of an IP address by a cookie. However, it is common practice for website operators, which by their nature are owners of a communications service – the website, to collect and use IP addresses for fraud prevention and cybersecurity purposes. For example, sites may block certain blacklisted IP addresses, or block addresses from IP addresses from countries known for excessive hacking activity, or identify denial of service attacks and other malicious activity by analyzing the IP address activity on the site. Each of these

activities falls within the permissible conduct under section 638.51(b)(2) ("To protect the rights or property of the provider"), (b)(3) ("To protect users of the service from abuse of service or unlawful use of the service" such as denial of service and data breaches), (b)(4) ("To record the fact that a wire or electronic communication was initiated or completed to protect the provider . . . or a user of that service from fraudulent, unlawful, or abusive use of the service," again, such as denial of service attacks or data breaches). Plaintiff fails to plead that WSI does not use the allegedly collected information for these purposes, and the core of Plaintiff's allegations lead to the conclusion that it does.

**6. *The Court should not follow* Moody v. C2 Educational Systems Inc., Greenley v. Kochava, Inc., *and* Shah v. Fandom, Inc.**

Plaintiff will likely rely on *Moody v. C2 Educational Systems Inc.*, No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024), *Greenley v. Kochava, Inc.*, No. 22-cv-01327, 2023 WL 4833466 (S.D. Cal. July 7, 2023), and *Shah v. Fandom, Inc.*, No. 24-cv-01062, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) to support her claim. (FAC ¶ 22.) The Court, however, should not follow these cases.

In *Moody*, the district court held that software installed on a defendant's website, which captured information from the plaintiff's device, constituted an illegal use of a trap and trace device under section 638.51. 2024 WL 3561367, at *1. There, the plaintiff alleged that the defendant installed the TikTok Software on its website and used the Software to collect his information. *Id.* The *Moody* court's analysis was incomplete and incorrect. ***First***, as to the court's statutory interpretation analysis, the court failed to consider sections 638.50-53's legislative history, which states that trap and trace devices apply only to telephones. The court also did not consider that applying section 638.51 to website technologies undermines the CCPA. Nor did the court consider the public policy implications of its ruling. ***Second***, as to its consent analysis, the court failed to explain why the

website visitor must provide consent for the website's decision to install a trap and trace device *on its website*. The court's reasoning would effectively outlaw Caller ID, requiring that a telephone company first obtain the consent of every possible person that may call a telephone subscriber that has installed Caller ID. That conclusion is directly contradictory to the FCC's reasoning and the holdings of multiple state supreme courts. ***Third***, as to the contents argument, the court incorrectly held that if a trap and trace device collects both record information and content information, the device still meets section 638.50's definition of a trap and trace device. For these reasons, the Court should not follow *Moody*.

For many of the same reasons, the Court should not follow *Greenley*. There, the district court held that "a private company's surreptitiously embedded software installed in a [plaintiff's] telephone" could "constitute a pen register" under section 638.51. 2023 WL 4833466, at *15. *Greenley* is nothing like this case because it concerned the installation of a device on the plaintiff's phone (not alleged here), which the plaintiff alleged was a pen register (not alleged here). Moreover, like the *Moody* court, the *Greenley* court's analysis of the text of section 638.51 is incomplete. The court failed to analyze sections 638.52 and 638.53. Additionally, the court failed to analyze the legislative history, CCPA, or any of the public policy consequences of its interpretation of section 638.51. In short, like *Moody*, the *Greenley* court failed to conduct a fulsome analysis of section 638.51.

Finally, the Court should not follow *Shah*. *Shah* is distinguishable from this case because the plaintiffs in *Shah* alleged that tracking software installed on *their devices* was a *pen register* (here, it's the opposite – the allegation is that WSI installed a trap and trace device on its own website). 2024 WL 4539577, at *1. While the *Shah* court held that section 638.51 applied to website communications, the court did so without considering Assembly Bill 1924 or the CCPA. Moreover, the court's acknowledgment that applying section 638.51 to websites "could unsettle the basic operating rules of the internet," but nonetheless holding that section 638.51

applies to websites (*id.* at *6), is contrary to the principle that a court interpreting an ambiguous California statute should "avoid a construction that would lead to unreasonable, impractical, or arbitrary results." *See Copley*, 39 Cal. 4th at 1291.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss the Class Action Complaint without leave to amend.

Dated: October 25, 2024 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Jay T. Ramsey*

P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN MURPHY

*Attorneys for Defendant*
WILLIAMS-SONOMA, INC.